**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

QUINCY WILSON, on behalf
of herself and all others similarly
situated,

      **Plaintiff,**

                                       **Case No.:**

**v.**                                  **CLASS ACTION ALLEGATIONS**

GRADY JUDD, in his official capacity as
Polk County Sheriff,

      **Defendant,**

_____/

## CLASS COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, QUINCY WILSON, on behalf of herself and all

others similarly situated, pursuant to the Family and Medical Leave Act ("FMLA")

and sues Defendant, GRADY JUDD, in his official capacity as Polk County Sheriff,

(hereinafter referred to as "POLK COUNTY SHERIFF") and alleges:

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,

1367.

2.      Venue lies within the United States District Court for the Middle

District of Florida, Tampa Division because a substantial part of the events giving

rise to this claim occurred in this Judicial District and is therefore proper pursuant

to 28 U.S.C. 1391(b).

## PARTIES

3.      Plaintiff, QUINCY WILSON, is an adult resident of Polk County, Florida.  Plaintiff is a former employee of Defendant who was a covered employee under the Family and Medical Leave Act.

4.      Defendant, GRADY JUDD, was and is the duly elected Sheriff of Polk County, Florida.  At all times material to this cause of action, Defendant operated the Polk County Sheriff's Office in his official capacity.  The Polk County Sheriff's Office is an organization formed pursuant to the laws of the State of Florida, is located within the confines of Polk County, Florida, operates within the State of Florida, and is a citizen of the State of Florida.

## GENERAL ALLEGATIONS

### *The Family and Medical Leave Act (FMLA)*

5.      Congress enacted the Family and Medical Leave Act (FMLA) "to balance the demands of the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity." 29 U.S.C. § 2601(b)(1).

6.      Thus, the FMLA entitles eligible employees to take up to twelve weeks of leave in one year for a variety of reasons, including the employee's own "serious health condition" as well as the "serious health condition" of a family

member.  29 U.S.C. § 2612(a)(1).

7.     FMLA leave may be taken as a single block of time, or it can be taken intermittently, meaning "in separate blocks of time due to a single qualifying reason." 29 U.S.C. § 2612(b)(1); 29 C.F.R. § 825.202(a).

8.     The FMLA makes it unlawful for an employer, like Defendant, "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).

9.     For Plaintiff, and those similarly situated to prove FMLA interference, they must simply demonstrate a benefit to which they were entitled under the Act.

10.    Unlawful FMLA interference covers a variety of acts by employers beyond simply refusing to authorize FMLA leave for an employee.

11.    First, an employer interferes with an employee's FMLA rights by "discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

12.    Second, employers cannot consider "FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c).

13.    Third, FMLA leave cannot be counted under a no-fault attendance policy, meaning that employees cannot accrue attendance points for taking FMLA leave under a no-fault attendance policy. *Id.*   No fault attendance policies do not necessarily violate the FMLA *as long as* points are not assessed for employees who are absent due to any FMLA qualifying reason.  WHD Opinion Letter FMLA2003-

4, 2003 WL 25739620, at *1 (emphasis added).

14.     An employee must "comply with the employer's usual and customary notice and procedural requirements for requesting leave." 29 C.F.R. § 825.302(d).   However, when an employee takes unforeseeable FMLA leave (less than 30 days' notice), the employee must give notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a)-(b).

15.     "If an employee submits a complete and sufficient certification signed by the health care provider, the employer may not request additional information from the health care provider . . . Employers may not ask health care providers for additional information beyond that required by the certification form." 29 C.F.R. § 825.307(a).

### *Defendant's FMLA Violating General Order*

16.     In or around 2020, Defendant enacted General Order 26.1.E.9.d.1) – Neglect of Duty Offenses – Unscheduled Absences.  The General Order states:

> An unscheduled absence is when a member is not at their workstation as scheduled or expected, without making previous arrangements before the close of the prior business day or at least twelve (12) hours in advance of the absence being requested.  A member who fails to make previous arrangements for an absence before the close of the prior business day or at least twelve (12) hours in advance of the absence is subject to discipline unless the member's failure to follow these procedures was caused by the need of the member to receive emergency medical treatment at a medical facility.  A member on leave under the Family and Medical Leave

Act (FMLA) who fails to make previous arrangements for an absence before the close of the prior business day or at least twelve (12) hours in advance of the absence is subject to discipline unless the member's failure to follow these procedures was caused by the need of the member to receive emergency medical treatment at a medical facility or the member receives a verifiable doctor's note for the unscheduled absence.

17.     Defendant's disciplinary guidelines for unscheduled absences withing a consecutive twelve-month period are/were:

(1)     Three (3) unscheduled absences – letter of guidance

(2)     Five (5) unscheduled absences – written reprimand

(3)     Seven (7) unscheduled absences – forty (40) working hours' suspension without pay

(4)     Nine (9) unscheduled absences – subject to dismissal

18.     Prior to General Order 26.1.E.9.d.1, Defendant had General Order 26.1.9.d.1.a.b, which stated:

An unscheduled absence is when a member is not at their workstation as scheduled or expected, without making previous arrangements before the close of the prior business day or at least twelve (12) hours in advance of the absence being requested *and is not protected by the provisions of the Family and Medical Leave Act.*

(emphasis added).

19.     Since the enactment of General Order 26.1.E.9.d.1), the Polk County Sheriff's Office has knowingly refused to comply with the FMLA.

20.     As a result, for the past few years Defendant has engaged in a pattern

or practice of interfering with the FMLA rights of its employees that were on approved intermittent FMLA leave but could not comply with General Order 26.1.E.9.d.1) because of the unforeseen nature of their serious health conditions.

21.     As a result, hundreds and potentially thousands of current and former employees of Defendant have been assessed points under Defendant's attendance policy for absences that were FMLA-protected.

22.     Defendant's violations of the FMLA have caused significant harm to its employees, including disciplinary actions, unpaid suspensions, and terminations, which caused reduced pay, reduced seniority, and reduced benefits including pension benefits and health benefits.

23.     In this action, Plaintiff seeks to represent all individuals who, during the statutory period (three years from the filing of this Complaint): (1) were eligible for leave under the FMLA, (2) were approved for intermittent leave under the FMLA, (3) utilized intermittent FMLA leave, and (4) had their FMLA rights interfered with by Defendant.

24.     As described more fully below, Defendant's interference with the FMLA rights of Plaintiff and the putative class members violated and continues to violate the FMLA by: (1) discouraging employees from using FMLA leave, (2) considering FMLA leave as a negative factor in employment actions, and/or (3) counting FMLA under Defendant's "no fault" attendance policy.

25.     Plaintiff was affected by these unlawful practices in the manner described below.

## FACTUAL ALLEGATIONS

26.     In or around November 2016, Plaintiff began her employment with Defendant as a full-time Detention Deputy.

27.     Plaintiff suffered from anxiety and depression that was sometimes exacerbated by job-related stress.

28.     On February 11, 2021, Plaintiff was provided a Notice of Eligibility & Rights and Responsibilities under the Family and Medical Leave Act by Krystal McArthur (Benefits Coordinator) indicating Plaintiff was eligible for FMLA leave for her own serious health condition.

29.     On February 24, 2021, Plaintiff submitted an application for intermittent leave under the FMLA for her own serious health condition.

30.     The same day (February 24, 2021), Plaintiff's treating physician completed the Certification of Health Care Provider for Employee's Serious Health Condition under the FMLA.  Plaintiff's doctor indicated that Plaintiff's condition is chronic and her need for leave would start on February 24, 2021.  Her doctor estimated that Plaintiff's condition would last until February 23, 2022.  Additionally, Plaintiff's physician noted that Plaintiff's condition made it medically necessary for Plaintiff to be absent from work on an intermittent basis.

Specifically, over the next six months, Plaintiff's episodes of incapacity were estimated to occur three times per week and likely to last approximately 24 to 76 hours per episode.

31. On March 15, 2021, Plaintiff was issued a verbal counseling by Sergeant Keith Brown for an unscheduled absence when Plaintiff was scheduled to work mandatory overtime. Sgt. Brown referenced General Order 26.1.9.d.1.a.b. Plaintiff's absence was related to Plaintiff's health issues for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that her absence was FMLA-related.

32. On August 6, 2021, Plaintiff was issued a memo from Sergeant E. Fulcher regarding an unscheduled absence when Plaintiff was scheduled to work mandatory overtime. Sgt. Fulcher referenced General Order 26.1.9.d.1.a.b. and noted that the memo should not be viewed as punitive in nature. Plaintiff's absence was related to Plaintiff's health issues for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that her absence was FMLA-related.

33. In or around August or September 2021, Plaintiff explained to Sergeant Bonnie Wingate that her absences were FMLA-related. Sgt. Wingate told Plaintiff that she would inform Lieutenant D. Palmer.

34. In or around late September/early October 2021, Lt. Palmer told

Plaintiff that they were not going to discipline Plaintiff or escalate the issue to Human Resources regarding her absences and that they were just keeping the documents for their records.

35.     On October 23, 2021, Plaintiff was issued several memos from Sergeant J. Rice related to unscheduled absences on September 20, 2021, September 21, 2021, October 4, 2021, and October 5, 2021.  The memo stated that it "should not be viewed as punitive in nature, but as a receipt documenting the date of your absence."  The memo referenced General Order 26.1.9.d.1.a.b. Plaintiff's absence was related to Plaintiff's health issues for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that her absence was FMLA-related.

36.     That same day (October 23, 2021), Sgt. Rice issued Plaintiff a Letter of Guidance for having three (3) unscheduled absences.  On the one hand, the Letter of Guidance stated that it was not punitive in nature.  On the other hand, it noted that the "disciplinary guidelines" for three (3) unscheduled absences was a Letter of Guidance.  Plaintiff's absence was related to Plaintiff's health issues for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that her absence was FMLA-related.

37.     On November 30, 2021, Plaintiff was issued a Letter of Reprimand by Lt. Palmer regarding her "unscheduled absences from work, which were not protected by the Family and Medical Leave Act" on October 5, 2021 and November

25, 2021.  The Letter of Reprimand cited General Order 26.1.E.9.d.1).  Plaintiff's October 5, 2021 absence was related to Plaintiff's health issues for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that the absence was FMLA-related.

38.     On March 11, 2022, Plaintiff was suspended without pay forty (40) hours for violating General Order 26.1.E.9.d.1).  Plaintiff was notified of the suspension by Major Kimberly Marcum.

39.     On May 13, 2022, Plaintiff was issued a Letter of Reprimand by Lieutenant Joseph J. Wilson for failing to work mandatory overtime on May 10, 2022 and May 13, 2022.  Plaintiff's absences were related to Plaintiff's health issues for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that her absences were FMLA-related.

40.     On May 20, 2022, Sergeant B. Wilson issued Plaintiff a memo stating that Plaintiff was absent for her assigned duty on May 20, 2022.  Although the subject line of the memo reads: "Unscheduled Absence," the memo notes that the absence was not unscheduled and was not FMLA related.  However, the absence was FMLA related and Plaintiff notified Defendant that it was FMLA-related.

41.     On May 26, 2022, Plaintiff was issued a memo from Captain Marco Avila related to unscheduled absences.  Captain Avila cited General Order 26.1.E.9.d.1) and noted that Plaintiff repeatedly violated the General Order and

was approaching nine (9) unscheduled absences in a consecutive twelve-month period.  Again, most of the absences were FMLA related and Plaintiff notified Defendant that they were FMLA-related.

42.    On August 4, 2022, Plaintiff was issued a memo by Sergeant A. Galloway regarding an unscheduled absence on August 4, 2022.  The memo stated that Plaintiff "advised immediately after briefing that you were not feeling well." The memo further stated that the absence was unscheduled, was not FMLA, but was not unapproved.

43.    On September 15, 2022, Plaintiff was issued a memo from Sgt. Wilson regarding an unscheduled absence.  Specifically, the memo noted that Plaintiff "texted on September 14, 2022 at 2032 hours."  Plaintiff first attempted to call the jail to inform her supervisors that she would be out, but no one answered the phone, so Plaintiff sent the text.  Plaintiff's absence was related to Plaintiff's health issues for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that her absence was FMLA-related.

44.    On September 19, 2022, Plaintiff was issued a memo from Sgt. Galloway regarding an unscheduled absence for being absent from assigned duty station between 1100 and 1800 hours.  Plaintiff's absence was related to Plaintiff's health issues for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that her absence was FMLA-related.

45.     On September 20, 2022, Plaintiff was issued a memo from Sgt. Galloway regarding an unscheduled absence for being absent from assigned duty station between 1200 and 1800 hours.  Plaintiff's absence was related to Plaintiff's health issues for which she was approved for FMLA by Defendant.  Specifically, Plaintiff asked for an ambulance to be called for her, but Sgt. Wison refused.  As a result, Plaintiff informed Sgt. Galloway that she was leaving early due to her health concerns.

46.     On September 23, 2022, Lieutenant Dwayne Daughtry recommended to Captain Marco Avila that Plaintiff receive disciplinary action (termination) for having to leave her shift early on September 20, 2022.

47.     On October 5, 2022, Plaintiff was issued a Notice of Unscheduled Absence by Sergeant M. Strafford.  In particular, the Notice stated that, at 1705 hours on October 4, 2022, Sgt. Strafford informed Plaintiff that she was needed for mandatory overtime on October 5, 2022.  Plaintiff replied via text message and asked if she could leave her shift early due to a doctor's appointment, which Sgt. Strafford denied.  As a result, Plaintiff informed Sgt. Strafford that she would not be able to report for mandatory overtime.  Plaintiff's absence for her doctor's appointment was related to Plaintiff's health condition for which she was approved for FMLA by Defendant and Plaintiff notified Defendant that it was FMLA-related.

48.     On October 7, 2022, Plaintiff's treating health care provider submitted to Defendant the Certification of Health Care Provider for Employee's Serious Health Condition under the Family and Medical Leave Act.   The Certification indicated that the approximate start date of Plaintiff's condition was September 30, 2021 and was indefinite/chronic in nature.   It was further specified that Plaintiff's health conditions were anxiety, depression, and panic attacks and that Plaintiff's episodes of incapacity were estimated to occur three (3) to four (4) times per month and likely to last two (2) days per episode.

49.     The same day (October 7, 2022), Defendant approved Plaintiff to be on intermitted FMLA leave for three (3) to four (4) episodes per month, two (2) days per episode, starting September 12, 2022 through March 12, 2023.

50.     Also on October 7, 2022, Captain Avila recommended to Major William Galloway that Plaintiff receive disciplinary action for receiving her twelfth unscheduled absence on September 20, 2022.

51.     On October 25, 2022, Plaintiff was issued an Emergency Suspension with Pay by Chief Michael L. Allen.   The suspension was "based upon probable cause that you may be in violation of **General Order 26.1.E.9.d.1) – Neglect of Duty Offenses – Unscheduled Absences**."   An Employee Status Hearing was scheduled for November 3, 2022.

52.     On November 3, 2022, Plaintiff had her predetermination hearing.

53.     On November 4, 2022, Plaintiff was terminated from her employment with Defendant for violating General Order 26.1.E.9.d.1).  Specifically, Defendant noted that Plaintiff was absent twelve (12) times between September 20, 2021 and September 20, 2022 and Plaintiff's absences were "unscheduled."

54.     By interfering with and violating Plaintiff's (and the class) FMLA rights, Defendant negatively impacted Plaintiff's (and the class) pay, seniority, and benefits.

## CLASS ACTION ALLEGATIONS

55.     Plaintiff realleges and incorporate paragraphs one (1) through fifty-four (54) as though set forth fully herein.

56.     Plaintiff brings this action on behalf of herself, and all others similarly situated, pursuant to Rule 23, Federal Rules of Civil Procedure ("Rule 23").  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

57.     Pursuant to Rule 23, Federal Rules of Civil Procedure, Plaintiff brings this case as a class action on behalf of all former and current employees of Defendant who, during the statutory period (three years prior to the filing of this Complaint) are or have been:

      (a)     eligible for leave under the FMLA,

      (b)     approved for intermittent leave under the FMLA,

(c)     utilized intermittent FMLA leave, and

(d)     issued discipline by Defendant for an absence protected by the FMLA or otherwise had their rights under the FMLA interfered with by Defendant.

58.     This action if properly maintainable as a class action because the requirements of Federal Rules of Civil Procedure 23(a), Rule 23(b)(1), (2), and (3) are met as follows:

59.     **Numerosity/Impracticability of Joinder**.  The Class is so numerous that joinder of all members is impracticable.  Upon information and belief, the Class has more than 500 members, thus joinder of those class members would be difficult, inconvenient, and inefficient.  Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court by resolving the issues concerning Defendant's violations of the FMLA in one forum, thus preserving judicial economy.

60.     **Commonality**.  Defendant engaged in a common course of conduct toward Plaintiff and members of the Class by: (1) discouraging employees from using FMLA leave, (2) considering FMLA leave as a negative factor in employment actions, and/or (3) counting FMLA under Defendant's "no fault" attendance policy. There are questions of law and fact common to Plaintiff and members of the Class.  These common questions of law and fact include, but are not limited to, the following:

(a)   Whether Defendant's General Order 26.1.E.9.d.1) violated (and continues to violate) the FMLA;

(b)   Whether Defendant interfered with the FMLA rights of the putative class by levying discipline against class members for utilizing approved intermittent FMLA leave;

(c)   Whether Defendant interfered with the FMLA rights of the class by counting putative class members' FMLA leave under Defendant's no-fault attendance policy;

(d)   How Defendant's violations of the FMLA impacted members of the proposed class, including the loss of seniority, pay, and benefits, including reduced pension benefits;

(e)   Whether putative class members are entitled to back pay, front pay, interest, liquidated damages, declaratory relief, injunctive relief, and attorneys' fees and costs for Defendant's violations of the law.

61.   The above-referenced legal and factual questions related to all the class members and those legal questions are substantially related to resolving this litigation.  Stated differently, Defendant's course of conduct in violating the FMLA affects all class members and the elements of the aforementioned causes of action are shared by all class members.

62.   Plaintiff's contentions are capable of class-wide resolution, such that the determination of the truth or falsity of the claims will revolve around an issue that is central to the validity of each one of the claims in one stroke.  Whether Defendant interfered with the putative class's FMLA rights by issuing points, levying discipline, and/or terminating class members who were absent from work

due to FMLA-qualifying reasons are common questions and the answers will be the same for every class member.  In other words, answers to these questions will determine, in "one stroke," which side will win the case.

63.     **Typicality**.  Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims, like the claims of the Class, arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories. Specifically, Plaintiff, like the class members, was issued points and/or disciplined for absences that were FMLA approved.  Plaintiff, like the class members, has been damaged by Defendant's FMLA violations in her pay, seniority, and benefits, including his pension.

64.     The relief sought is typical and outlined in the Prayer for Relief below.

65.     **Adequacy**.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff understands the issues in this case and is committed to vigorously pursuing this claim on behalf of the Class.  Plaintiff has suffered the damages alleged and has no interests antagonistic to the interest of any other Class members.

66.     Plaintiff has retained competent and capable legal counsel with experience in class action litigation, including FMLA claims and related class and collective action litigation.  Plaintiff and counsel are committed to prosecuting this action vigorously on behalf of the Class, and neither have interests that are

contrary to, or that conflict with, those of the proposed Class.

67.     Defendant has no unique defenses against Plaintiff that would interfere with Plaintiff's representation of the Class.

68.     **FRCP 23(b)(1)**.  This action is properly maintainable as a class action under Rule 23(b)(1), Federal Rules of Civil Procedure, because the prosecution of separate actions by, or against, members of the class would create a risk of inconsistent adjudications regarding individual class members that would establish incompatible standards of conduct for Defendant, the party opposing the class.  Thus, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

69.     Additionally, prosecuting separate actions by individual members of the Class would create the risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications.    Moreover, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  A class action presents far few management difficulties and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

70.     The central questions in this litigation are:

(a)     Whether Defendant's General Order 26.1.E.9.d.1) violated (and continues to violate) the FMLA;

    (b)    Whether Defendant interfered with the FMLA rights of the putative class by levying discipline against class members for utilizing approved intermittent FMLA leave; and

    (c)    Whether Defendant interfered with the FMLA rights of the class by counting putative class members' FMLA leave under Defendant's no-fault attendance policy.

71.    **FRCP 23(b)(2)**.  This action is also properly maintainable as a class action under Rule 23(b)(2), Federal Rules of Civil Procedure.

72.    Defendant is alleged to have violated the FMLA and acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class-wide basis.  Defendant has maintained a uniform practice of violating the FMLA in its disciplinary policies and actions.  As such, Defendant has acted or refused to act on grounds that apply generally to the Class.

73.    The monetary relief Plaintiff seeks either flows from and/or is incidental to the declaratory relief sought, as it flows directly from the ordering of such declaratory relief and can be calculated in a simple, objective, and mechanical manner.  Specifically, the losses to the Class can be calculated by: (1) calculating lost wages based on whether a class member suspended, terminated, or suffered other economic losses, (2) comparing the amounts contributed to the putative class's pensions with the amounts that would have been contributed had the class members not suffered economic losses; and (3) a simple doubling of back pay and

benefits if Defendant is found liable for liquidated damages.

74.   **FRCP 23(b)(3).**   This action is also properly maintainable as a class action under FRCP 23(b)(3).  The questions of law and fact common to all members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

75.   Defendant engaged in a common course of conduct toward Plaintiff and members of the Class.  The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.   By resolving the common issues described above in a single class proceeding, each member of the proposed class will receive a determination of whether Defendant violated his or her rights under the FMLA and whether a remedy should be provided under the FMLA.  Moreover, by resolving the dominant, central, and overriding issues as to whether Defendant has violated the Class members' FMLA rights, Defendant will not have to face multiple claims related to the issue.

76.   A class action is the superior method for the fair and efficient adjudication of this controversy.  Class-wide adjudication is a superior manner of compelling Defendant to comply with the protections afforded to Plaintiff and

members of the Class under the FMLA.  The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendant is small, as Defendant's pattern/practice of violating the FMLA is a common problem that that affects all employees of Defendant affected by Defendant's FMLA violating policies and procedures and a common resolution of Defendant's violations of the law will result in far greater certainty for Defendant's employees.

77.     Management of these claims in a Class is likely to present significantly fewer difficulties than are presented in many individual class claims because the relief requires uniform treatment between prevailing plaintiffs.  Class treatment is superior to multiple individual lawsuits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

78.     Upon information and belief, there is no other existing lawsuit instituted by members of the Class raising these allegations prior to the time that this Complaint is filed.

### COUNT I
### FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE

79.     Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through seventy-eight (78).

80.     Plaintiff is an individual entitled to protection under the Family and Medical Leave Act (FMLA), 29 U.S.C. §2601, *et seq.*

81.     Plaintiff is an eligible employee within the meaning of the FMLA because Plaintiff worked for Defendant for twelve (12) months, had at least 1,250 hours of service for the Defendant during twelve (12) months immediately preceding her eligible FMLA leave, and worked at a location where the Defendant had at least fifty (50) employees within seventy-five (75) miles.

82.     Defendant is a covered employer under the FMLA in that it had fifty (50) or more employees in twenty (20) or more work weeks in the current or preceding calendar year.

83.     Plaintiff suffered from a serious health condition within the meaning of the FMLA.

84.     Defendant's actions interfered with Plaintiff's lawful exercise of her FMLA rights.   Specifically, as more fully described above, Defendant (1) discouraged Plaintiff from using FMLA leave, (2) considered FMLA leave as a negative factor in employment actions, and/or (3) counted FMLA under Defendant's "no fault" attendance policy.

85.     Defendant's actions constitute violations of the FMLA.

86.     As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

WHEREFORE, Plaintiff prays for the following damages against Defendant:

a.  Back pay and benefits;

b.  Prejudgment interest on back pay and benefits;

c.  Front pay and benefits;

d.  Liquidated damages;

e.  Attorneys' fees and costs;

f.  Injunctive relief; and

g.  For any other relief this Court deems just and equitable.

## PRAYER FOR RELIEF

87.  Plaintiff, on behalf of herself and on behalf of the Class Members, prays for judgment against Defendant as follows:

a.  Certification of the proposed Class;

b.  Appointment of the named Plaintiff as Class Representative;

c.  Appointment of the undersigned as Class Counsel;

d.  An award to Plaintiff and the Class of (1) back pay, (2) front pay, (3) lost benefits of employment, (4) pre-judgment interest, (5) post-judgment interest, (6) liquidated damages, (7) attorneys' fees, costs, and expenses as allowed by law; and

e.  For other further equitable, injunctive, and declaratory relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

88.  Plaintiff, on behalf of herself and others similarly situated, demands

a trial by jury on all issues so triable.

**DATED** this 4th day of October 2023.

FLORIN GRAY BOUZAS OWENS, LLC.

s/ *Gregory A. Owens*
**GREGORY A. OWENS, ESQUIRE**
Florida Bar No.: 51366
greg@fgbolaw.com
**CHRISTOPHER GRAY, ESQUIRE**
Florida Bar No.: 902004
chris@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, Florida 33558
(727) 254-5255
(727) 483-7942 (fax)
*Trial Attorneys for Plaintiff*